| | |
|---|---|
| 1 | TODD A. PICKLES (SBN 215629) |
| | picklest@gtlaw.com |
| 2 | GREENBERG TRAURIG, LLP |
| | 1201 K Street, Suite 1100 |
| 3 | Sacramento, CA 95814 |
| | Tel: (916) 442-1111 |
| 4 | Fax: (916) 448-1709 |
| 5 | MICHAEL R. SKLAIRE (*Pro Hac Vice* to be filed) |
| | sklairem@gtlaw.com |
| 6 | BRETT A. CASTELLAT (*Pro Hac Vice* to be filed) |
| | castellatb@gtlaw.com |
| 7 | GREENBERG TRAURIG, LLP |
| | 1750 Tysons Boulevard Suite 1000 |
| 8 | McLean, Virginia 22102 |
| | Telephone: (703) 749-1300 |
| 9 | Facsimile: (703)749-1301 |
| 10 | SARAH M. MATHEWS (*Pro Hac Vice* to be filed) |
| | mathewss@gtlaw.com |
| 11 | GREENBERG TRAURIG, LLP |
| | 1144 15th Street, Suite 3300 |
| 12 | Denver, Colorado 80202 |
| | Telephone: (303) 572-6500 |
| 13 | Facsimile: (303) 572-6540 |
| 14 | Attorneys for Plaintiff BEHRING REGIONAL CENTER LLC |

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BEHRING REGIONAL CENTER LLC,** | CASE NO. 3:20-cv-09263-JSC |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO GOVERNMENT'S ARGUMENT REGARDING FEDERAL VACANCIES REFORM ACT** |
| v. | Date: May 13, 2021 |
| **ALEJANDRO MAYORKAS,** in his official capacity as Secretary of the Department of Homeland Security, *et al.*, | Time: 9:00 A.M. |
| | Courtroom: E, 15th Floor |
| Defendant. | Magistrate Judge Jacqueline Scott Corley |
| | Complaint Filed: December 21, 2020 |
| | Trial Date: None Set |

1    CASE NO. 3:20-CV-09263-JSC
PLAINTIFF'S RESPONSE TO GOVERNMENT ARGUMENT RE: FVRA

Failing to refute that actions taken in violation of the Federal Vacancies Reform Act ("FVRA") are void and "may not be ratified," the Department of Homeland Security ("DHS") is now clinging to the argument that the EB-5 Rule did not violate the FVRA because this was not a function or duty of the Secretary, and the ability to change the Rule was delegable. DHS posits that the FVRA's reach is functionally non-existent because it is limited to the rare situation of Congress creating a non-delegable duty, which DHS asserts was not the case for changes to investment criteria for the EB-5 Program. DHS's argument also appears to signal that its general delegation order of 2003 is so broad as to make the FVRA inapplicable to this agency. The case law, however, does not support such a sweeping refutation of Congress's intent to make sure that federal agencies do not perform end runs around the Senate's role in the Presidential appointment process. In this case, the Secretary did not delegate the authority to change investment criteria for the EB-5 Program in 2003. Congress vested the Attorney General (and then the Secretary after the agency was created, according to DHS) with that function and duty. It was not delegated and ratification cannot protect this violation of the FVRA.[1]

### A. The FVRA is Not Limited to Non-Delegable Functions or Duties

Behring Regional Center ("BRC") has previously cited to the provisions of the FVRA explaining that the functions or duties performed by officers other than those properly designated to perform those functions and duties are void and cannot be ratified. 5 U.S.C. § 3348(a)(2), § 3348(d). Despite the absence of language limiting the FVRA to expressly non-delegable functions or duties, DHS argues that the FVRA is so limited. The District Court for the District of Columbia has already rejected the same argument and authorities upon which DHS relies—*i.e.*, that "the vacant office provision of the FVRA applies only in those rare circumstances in which the function at issue is not only assigned to a single office but may also not be reassigned." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 31-34 (D.D.C. 2020). In *L.M.-M.*, DHS argued that although Congress had assigned specific

---

[1] Although DHS refuses to respond many of BRC's arguments because DHS asserts they are "irrelevant," DHS does not deny that it has singled out the EB-5 Program for ratification in contrast to similar challenges to DHS's rules based upon the same violation of the FVRA through Kevin McAleenan's unlawful designation, or that it raised the *de facto* officer defense for BRC but not another challenge to McAleenan's designation filed the same day. There is simply no question that DHS's position in this case is at odds with its treatment of other similar cases and cannot be justified by any reasoned legal approach.

duties to the single office of the USCIS Director, because the Secretary of Homeland Security was also vested by law with the "functions of all officers" of DHS and could delegate those functions, that meant that functions given to the USCIS Director were delegable and not subject to the FVRA. The district court rejected that argument for several reasons.

The court noted that the text of the FVRA itself indicated it was not limited to expressly non-delegable duties because Congress presupposed circumstances where duties were assigned to a particular officer by statute but the authority was also generally vested by law in the head of the agency who had delegation authority, or that an agency would delegate or reassign duties by regulation within 180-days of the vacancy. Nevertheless, Congress still subjected those functions and duties to the FVRA. *See id*. at 32-33. The court explained that Congress would not have drafted the FVRA as it did if it intended it only to apply to expressly non-delegable functions. *Id*. To the contrary, the court noted that "the word 'non-delegable' appears nowhere in the statute." *Id*. at 33. The D.C. court also rejected DHS's citation to the same legislative history DHS cites to here, explaining that "the word [non-delegable in the legislative history] does not have the meaning [DHS assigns] to it. To the contrary, the Senate Report used the term in the same breath in which it affirms that the 'non-delegable' functions and duties include those assigned by regulation 180 days before the vacancy arose, even if later reassigned." *Id*. at 33-34 (citing S. Rep. No. 105-250, at 18 (1998)).

Finally, as the court in *L.L.-M*. recognized, accepting DHS's non-delegable argument "is at odds with the statutory purpose of the FVRA." *Id*. at 34. Nearly every agency and every cabinet-level department has a statute that vests the head of the agency or department with the authority to delegate functions. *Id*. As such, most actions by department heads are delegable. "It was the pervasive use of those vesting-and-delegation statutes, along with 'the lack of an effective enforcement process,' that convinced Congress of the need to enact the FVRA." *Id*. (citing Senate Report at 7). To construe the FVRA as DHS advocates here (*i.e.*, that it only applies when there is an express statutory bar on delegating a specific function or duty), would mean that Congress, having recognized the persistent problem of the Executive Branch using acting officials to bypass Senate confirmation, nonetheless created the FVRA having no application save for the rarest of circumstances of when Congress expressly made a duty non-delegable. As the D.C. District Court realized, this would have meant that

"Congress would have done little 'to restore [the] constitutionally mandated procedures that must be ratified before acting officials may serve in positions that require Senate confirmation." *Id*. (citing, *inter alia*, Senate Report at 8). The Court here should follow the district court in *L.M.-M.* and reject DHS's assertion that the FVRA only applies to those functions or duties that are expressly non-delegable. To do otherwise would render the enforcement provisions of the FVRA effectively meaningless.

Save for a few passing references, DHS mostly ignores the impact of the *L.M.-M.* decision on this case. Instead, DHS simply resurrects the rejected argument it made in that case here and never substantively addresses the basis of the court's decision in *L.M.-M*. DHS cannot ask this Court to rely on the same discredited argument without acknowledging the reasons why prior courts have rejected it. *See*, *e.g.*, *Pangea Legal Srvcs. v. DHS*, Case Nos. 20-cv-9253-JD; No. 20-cv-9258-JD, 2021 U.S. Dist. LEXIS 5093, *17-18 (N.D. Cal. Jan. 8, 2021).

The cases relied upon by DHS do not support the defense here, or align with the *L.M.-M.* holding. In *Northwest Immigration Rights Project v. USCIS*, Case No. 19-cv-3283 RDM, 2020 U.S. Dist. LEXIS 187410 (D.D.C. Oct. 9, 2020), for example, the Court did ***not*** hold that the FVRA applies only to functions or duties that are expressly non-delegable. In truth, Judge Moss, who also was the judge in the *L.M.-M.*, held exactly the opposite: "The Court has previously interpreted the FVRA's definition of "function or duty" to encompass ***delegable*** duties that were not delegated during the 180-day window proceeding the vacancy." *Id*. at *53 (emphasis added). As for DHS's citation to *Guedes v. BATFE*, 920 F.3d 1 (D.C. Cir. 2019), DHS does not address BRC's prior argument that the language to which it cites in *Guedes* was dictum, as recognized by the district court in *L.M.-M.*, for which *Guedes* would have been binding precedent. Instead, as the court in *L.M.-M.* explained in rejecting DHS's narrow interpretation and reliance on *Guedes*, the issue of the application of the FVRA was not litigated before D.C. Circuit Court in *Guedes*. *L.M.-M.*, 442 F. Supp. 3d at 33. Lastly, DHS's reliance on the decision in *United States v. Harris County*, No. 4:16-CV-2331, 2017 U.S. Dist. LEXIS 229179, at *7 n.5 (S.D. Tex. Apr. 26, 2017), is misplaced as that court found that the FVRA argument was waived by the defendant for raising it in reply, and then it cited no authority nor engaged in any analysis in stating in dictum that non-delegable duties are not subject to the FVRA.

Consistent with the text of the FVRA, and in order to fulfill its purpose and avoid rendering it meaningless, the Court should reject DHS's non-delegable argument and find that the FVRA applies to those functions or duties that Congress vests in a single officer, even if they may arguably be delegated.

**B. The Secretary Has Not Delegated the Changes to Investment Criteria**

Congress authorized the Attorney General and no other official with the authority to change investment criteria under the EB-5 Program—*i.e.*, "to prescribe regulations increasing the dollar amount" and "in the case of investment made in a targeted employment area, specify an amount of capital" lower than that for non-TEAs. *See* 8 U.S.C. § 1153(b)(5). If, as DHS asserts, this authority was transferred by Congress to the Secretary in 2002,[2] DHS does not dispute that Congress did not subsequently authorize anyone other than the Secretary to change the investment criteria. On this basis alone, the action of changing the investment criteria under § 1153(b) is the function and duty that Congress invested in a single officer of the Secretary and thus fall within the FVRA. *See* 5 U.S.C. § 3348(a)(2)(A).

Conceding that Congress has not assigned the function to anyone else, DHS instead focuses on whether the Secretary delegated this authority. As discussed below, BRC disagrees that actual

---

[2] DHS cites to 6 U.S.C. § 557, for the proposition that the authority to change investment criteria was transferred from the Attorney General to the Secretary of Homeland Security. That section does not actually transfer any authority but rather provides that *if* authority has been transferred, the old statute should be read as referring to the Secretary as opposed to another officer: "With respect to any function transferred by or under this chapter (including under a reorganization plan that becomes effective under section 542 of this title) and exercised on or after the effective date of this chapter, reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred." 6 U.S.C. § 557. DHS did not identify any other statute by which Congress specifically "transferred" the function of the EB-5 Program to the Secretary of Homeland Security. Elsewhere DHS cites to the Secretary's general authority under 8 U.S.C. § 1103(a). Section 1103(a)(1) states: "The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, ***except insofar*** as this chapter or ***such laws relate to the powers, functions, and duties conferred upon*** the President, ***Attorney General,*** the Secretary of State, the officers of the Department of State, or diplomatic or consular officers . . . ." 8 U.S.C. § 1103(a)(1) (emphasis added). The Court need not resolve whether the authority has actually be transferred from the Attorney General to the Secretary because under all scenarios the authority to change the EB-5 investment criteria was never delegated by Congress to anyone other than the Attorney General, or the Secretary, and factually it was never delegated to anyone, including McAleenan, such that his decision in violation of the FVRA cannot be ratified.

delegation of a statutory function necessarily impacts application of the FVRA. But the Court need not decide that issue because, as a factual matter, DHS cannot point to any instance of the Secretary expressly delegating the specific authority "to prescribe regulations increasing the dollar amount" and to "specify an amount of capital" in a TEA under the EB-5 Program to any other DHS officer, including the Commissioner of Customs and Border Protection. The record remains undisputed that, not only did Congress invest the authority to change investment criteria only in a single officer, but the Secretary of Homeland Security never delegated that specific authority to any other officer.

Instead, DHS submits a 2003 delegation order ("2003 Order") as dispositive to the specific challenge to the EB-5 Rule in this case. (ECF No. 39-1 [Declaration of Juliana Blackwell, Ex. 1 (Delegation to Deputy Secretary, 6/23/2003)]). Putting aside the absence of any factual basis in the record to indicate that this delegation was in effect in 2019, a review of the delegation order shows it has no bearing on the issue before the Court. In fact, contrary to DHS's assertion, nowhere does the 2003 Order make any mention of delegating the authority to change investment criteria under § 1153(b). Instead, the order itself purports to delegate to the Deputy Secretary (which also was not a position Kevin McAleenan occupied) various other tasks. DHS relies on two here but neither work to save McAleenan's unlawful decision.

First, DHS points to the provision in the 2003 Order that the Deputy Secretary, "[a]cting for the Secretary" has the authority "to sign, approve, or disapprove any proposed or final rule, regulation, or related document." (Ex. 1, at II.G.) This is not the literal nor functional equivalent of "prescrib[ing] regulations increasing the dollar amount" of investments in the EB-5 program, much less so the act of "specif[ying] an amount of capital" for investments in TEAs. Indeed, it is significant that the 2003 Order did not include the formative functions of rulemaking such as "establishing," "promulgating," or "prescribing" rules as set forth in the statutory authority but instead the order limited the delegation to the ministerial action of signing or approving a final rule. *Compare* Ex. 1 at II.G *with, e.g.,* 8 U.S.C. § 1103(a)(3) (Secretary "shall establish regulations …."); 10 U.S.C. 10202(b) (Secretary "shall prescribe regulations …"); 40 U.S.C. § 1315(c)(1) (same); P. L. 108-176, Title VI, § 612(b), 117 Stat. 2574 ("the Secretary of Homeland Security shall promulgate an interim final rule . . . ."). Equally important is that, unlike the other delegations in the 2003 Order, the one relating to signing or approving

a final rule is preceded with the condition that it be done "acting for the Secretary." This necessarily means that power to sign or approve a final rule was not absolutely delegated to the Deputy (as were some other functions) but rather only when done at the behest of the Secretary. For all these reasons, the reference to delegation of authority to sign or approve a final rule at the direction of the Secretary was and is not an actual delegation of the authority to change the investment criteria for the EB-5 Program.

Second, and even less apt, is DHS's reliance on the reference in the 2003 Order to the delegation of the "[p]erformance of any other duties the Security of Homeland Security may designate." (Ex. 1, at II.H). This provision does not actually delegate any functions at all but merely reserves the right to do so. The question is not whether the Secretary could have delegated the specific functions of changing the investment criteria for the EB-5 Program, but whether she or he actually did. The 2003 Order does not by its terms delegate any of the specific functions or duties relating to changing the investment criteria that Congress invested in the Secretary. DHS's reliance on a general delegation that does not encompass those specific duties is necessarily inapplicable. *Cf. Corley v. U.S.*, 556 U.S. 303, 316 (2009) (specific statutes control over general statutes when in conflict).

As for the court's decision in *Northwest Immigration*, it does not necessitate a contrary result. In that case, there was no analysis or discussion of the functions or duties Congress vested to the Secretary under § 1153(b) and the plaintiffs in that case pointed to a different statute (6 U.S.C. § 112) to argue generally about the "authority to issue final rules." *See Northwest Immigration*, 2020 U.S. Dist. LEXIS 187410, at *53-54. The court never was asked to decide whether the authority to change investment criteria was a function or duty of the Secretary (it is), or whether it was actually delegated, including in the 2003 Order (it was not). Moreover, the same outcome as in *Northwest Immigration* should not occur here.

First, the 2003 Order here by its terms does not delegate authority to "sign" or "approve" DHS regulations to the position that McAleenan lawfully occupied in 2019. As noted, Congress understood that agency heads would delegate functions and was reacting to the misuse of such delegation authority in enacting the FVRA, in which Congress created orders of succession and made violations of the FVRA not subject to ratification. Consistent with the FVRA's terms and to fulfill its purpose, it is

implicated when someone other than the Secretary, or an officer to whom the Secretary has delegated his or her authority, performs a statutorily required function or duty. Put differently, DHS cannot avail itself of the 2003 Order to avoid application of the FVRA because McAleenan was necessarily not relying on that delegation when he signed the EB-5 Rule as he was not the Deputy to the Secretary. To hold otherwise would promote the very gamesmanship and misuse of delegation authority that Congress sought to prohibit in the FVRA.

Second, the district court in *L.M.-M.*, having correctly found that the FVRA is not limited to expressly non-delegable functions or duties, nonetheless incorrectly assumed that the FVRA would not include the situation of an actual delegation of a function or duty more than 180 days before the vacancy. *See L.M.-M.*, 442 F. Supp. 3d at 34. In arriving at this exception, the court cited to 5 U.S.C. § 3348(a)(2)(B)(ii)[3] and reasoned that because Congress created a "look-back" provision of 180 days for deciding a function or duty by regulation under the FVRA, by implication it meant that if a delegation of the function or duty occurred outside of that window it would not be covered by the FVRA. *Id*. Based on this analysis, the court in *Northwest Immigration* found that because the authority to sign a final rule was delegated in 2003, it was more within the 180 day window of the vacancy to the office which Cuccinelli was unlawfully designated and so fell outside of the FVRA. *See Northwest Immigration*, 2020 U.S. Dist. LEXIS 187410, at *52-55.

Section 3348(a)(2)(B)(ii), on which the court relied in *L.L.-M.* and *Northwest Immigration*, only applies to situations where a function or duty was prescribed "by regulation." 5 U.S.C. § 3348(a)(2)(B)(ii). In contrast, § 3348(a)(2)(A) relates to functions or duties "established by statute" and thus is the section applicable to the statutory authority to change investment criteria under 8 U.S.C. § 1153(b) here. Importantly, Section 3348(a)(2)(A) does not include any limiting 180-day look back period for functions and duties. Under the statutory interpretive canon of *expression unius est exclusion alterius* (meaning "the inclusion of one is the exclusion of the other"), because Congress included the

---

[3] Section 3348(a)(2)(B) provides a "function and duty" under the FVRA includes one that: "(i)(I) is established by regulation; and (II) is required by such regulation to be performed by the applicable officer (and only that officer); and (ii) includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.' 5 U.S.C. § 3348(a)(2)(B).

limitation of a 180-lookback period only for regulatory functions or duties, but not statutory functions, this Court can infer that Congress did not exempt any functions or duties established or required by statute from the reach of the FVRA. *Cf. Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 450 F.3d 930, 939 (9th Cir. 2006); *Ctr. for Food Safety v. Perdue*, Case No. 20-cv-01537-RS, 2021 U.S. Dist. LEXIS 65196, *24 (N.D. Cal. Mar. 18, 2021). Moreover, Section 3348(a)(2)(B)(ii), on which the court in *Northwest Immigration* relied, states the FVRA applies "if the applicable regulation is *in effect* at any time during the 180-day period." 5 U.S.C. § 3348(a)(2)(B)(ii) (emphasis). Thus, the appropriate question is not if the delegation was made more than 180 days before, but if it was "in effect" within 180 days, which would be the case here. Ultimately, however, the Court need not decide whether the carve out in *Northwest Immigration* for delegations of statutory functions more than 180 days before the vacancy is correct because there was no actual delegation of the Secretary's authority under § 1153(b) at any point.

Seemingly unique to this case, DHS has sought to defend McAleenan's designation based upon a suspect ratification and has otherwise advanced legal arguments rejected by other courts or based on pure dicta. Regardless of its efforts, the law is clear that the change in investment criteria under § 1153(b) was a function or duty that Congress vested into single office of the Secretary of Homeland Security, and thus McAleenan's performance of that function when he unlawfully was designated to that office violated the FVRA and cannot be ratified. The Court should enter judgment on behalf of BRC on its Fourth Claim.

Dated: April 28, 2021                                    Respectfully submitted,

                                                          GREENBERG TRAURIG LLP


                                                          By: */s/ Todd A. Pickles*
                                                             Todd A. Pickles
                                                             Michael R. Sklaire (*Pro Hac Vice* to be filed)
                                                             Brett A. Castellat (*Pro Hac Vice* to be filed)
                                                             Attorneys for Plaintiff
                                                             BEHRING REGIONAL CENTER LLC